# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2:12-mj-199
)
350 South Hague Avenue )
Columbus, Ohio )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

### See Attachment A

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Section 841 | Possession with the intent to distribute a controlled substance. |
| Title 21 U.S.C. Section 843(b) | Use of a communication facility to further a Title 21 violation. |
| Title 21 U.S.C. Section 846 | Conspiracy to distribute a controlled substance. |

The application is based on these facts:

### See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Marvich, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/22/2012

_____
*Judge's signature*

City and state: Columbus, Ohio         Terrence P. Kemp   U.S. Mag. Judge
*Printed name and title*

## AFFIDAVIT

I, Ryan Marvich, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, deposes and states:

### INTRODUCTION

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a HSI agent since 2003. I have participated in investigations of narcotics trafficking and, among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Through my training, education and experience, I have become familiar with the methods and tactics utilized by individuals that are trafficking in illegal narcotics.

2. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of HSI and other law enforcement; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another HSI agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included details of every aspect of the investigation.

3. Your Affiant believes that probable cause exists to believe that **Jose Rodriguez** has committed and is continuing to commit violations of the following federal statutes:

   a. Title 21, United States Code Sections 841 (a) (1), distribution and possession with the intent to distribute controlled substances, namely methamphetamines;
   b. Title 21, United States Code, Section 843(b), the use of a communication facility to commit, facilitate or further the commission of a Title 21, United States Code, felony offense:
   c. Title 21, United States Code, Section 846, conspiracy to distribute and possess with the intent to distribute controlled substances, namely methamphetamines; and
   d. Title 18, United States Code, Section 2, aiding and abetting the aforementioned crimes.

   Herein referred to as (the "TARGET OFFENSES").

4. For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by **Jose Rodriguez**.

### Probable Cause

5. In July 2010, Homeland Security Investigations (HSI), Resident Agent in Charge (RAC)/Columbus, received information from Confidential Source #1 (CS1) relating to a large-scale narcotics smuggling organization operating in the Marion and Columbus, Ohio areas.
6. According to CS1, this narcotic smuggling organization operates by bringing narcotics, including marijuana, cocaine, heroin and methamphetamines into the United States around the area of McAllen, Texas. These drugs are then transported via tractor-trailer and personal vehicles to the Marion and/or Columbus, Ohio areas. CS1 has provided information concerning truck-loads of narcotics that have been smuggled into the

2

Columbus area by this organization that CS1 personally participated in or even organized. According to CS1 this organization is run by the Los Zetas Drug Trafficking Organization (DTO) in Mexico and that actual Zeta members are located in Ohio to control these operations.

7. During the course of this investigation, your Affiant and other investigators from the South Central Ohio HIDTA (High Intensity Drug Trafficking Area) Task Force have been able to corroborate information through the use of multiple confidential sources, surveillances, subpoenas, telephone toll analysis, trash pulls, consensually recorded telephone calls and other investigative methods to develop probable cause that an individual named Jose Salinas and other individuals are involved in narcotics distribution in and around the Columbus, Ohio area.

8. On February 16, 2012, your Affiant obtained a Federal Court Order issued out of the Southern District of Ohio, authorizing the interception of wire communications and GPS pinging on **TARGET TELEPHONE-1 (956-321-2245)**, subscribed to Jose Salinas, and signed by Federal District Judge Edmund A. Sargus, Jr.

9. On February 16, 2012, your Affiant served this Federal Court Order authorizing the interception of wire communications and GPS pinging **TARGET TELEPHONE-1** on Sprint/Nextel Communications.

10. On February 16, 2012, at approximately 4:30pm HSI RAC/Columbus began intercepting wire communications and receiving GPS ping locations on **TARGET TELEPHONE-1**.

## March 8, 2012 wire intercept

11. On March 8, 2012, at approximately 5:22 p.m., Jose Salinas received an incoming call, call #673, on **TARGET TELEPHONE-1** from an unidentified male (UM) at telephone number 740-205-7772, subscribed to a Ramon Ramirez, PO Box 54988, Irvine, CA 92619.[1] The following is a transcript of that telephone conversation between Jose Salinas and the individual using telephone 740-205-7772. Words placed in parenthesis have been placed by your Affiant and are your Affiant's understanding of this conversation that is based upon your Affiant's training and experience and understanding of this investigation, including any code words that the case agent knows that are sometimes

---

[1] Your Affiant knows that this address is a default address used by Sprint/Nextel when a customer chooses not to provide an address when activating a new pre-paid cellular telephone.

3

used by individual involved in the smuggling and distribution of narcotics.

[BEGINNING OF CALL]

UM: Hello.

JOSE: Who is it?

UM: What's going on?

JOSE: What's up?

UM: What's happening? Are you working or not?

JOSE: No, I'm just here arriving at home.

UM: All right. That's good. And so what, is, is there any work or what?

JOSE: Nothing, dude.

UM: Nothing?

JOSE: Yeah.

UM: Son of a fucking bitch! That's tough, huh?

JOSE: And you, have you worked?

UM: Uh, no! The same... there's nothing.

JOSE: All right. No, that's tough.

UM: Yeah. And your buddies, they, they haven't done anything?

JOSE: Nothing, dude! Look, an asshole took off with, with about forty (40) [forty pounds of marijuana that was stolen/lost as discussed in a previous call].

UM: Oh.

JOSE: And, and now everything went to shit.

UM: Oh, but, but the other one [other kind of narcotic, possibly cocaine], has there been anything?

JOSE: No, nothing of the other one [other kind of narcotic, possibly cocaine], dude.

UM: Son of a fucking bitch. No, that's fucking tough.

4

**JOSE**: Yeah.

**UM**: We were also looking for some [other kind of narcotic, possibly cocaine] because there's nothing.

**JOSE**: You guys don't have anything? [other kind of narcotic, possibly cocaine]

**UM**: No, dude, nothing!

**JOSE**: How, how much have you guys been getting them [other kind of narcotic, possibly cocaine] for?

**UM**: Uh, what, the yard [marijuana]?

**JOSE**: No, uh, the other one [other kind of narcotic, possibly cocaine].

**UM**: Well, we don't... the most we are paying for it is, is nine (9), nine and a half (9 ½). [$9,000.00 -$9,500.00]

**JOSE**: All right.

**UM**: Yeah. Or, or eight (8) a quarter.

**JOSE**: Eight (8) for a quarter? [a quarter kilogram of cocaine – the case agents knows that the current price for a kilogram of cocaine in the Columbus, Ohio area is approximately $32,000 per kilogram. That would make a quarter kilogram sell for approximately $8,000.00.]

**UM**: Yeah.

**JOSE**: All right. And, and, and the whole one? [a kilogram of cocaine]

**UM**: The whole one... well, the minimum, the minimum that we get it for is for thirty (30), thirty and a half (30 ½). [$30,500.00 per kilogram of cocaine]

**JOSE**: That, that was what a dude was telling me. He was telling me... he said that he was offered that and that they'd get him some but that, that it would be for thirty one and a half (31 ½) and I told him, "No, it's tough like that." [$31,500.00 per kilogram of cocaine]

**UM**: Yeah, not like that.

**JOSE**: Yeah.

**UM**: No, not like that... not like that.

[VOICES OVERLAP]

**JOSE**: No, no, why the fuck? Why... no, not like that.

5

UM: Yeah. So, you don't have anything, anything right now, either? [no narcotics]

JOSE: Nothing, dude! Nothing, nothing, dude… nothing at all! [No narcotics]

UM: Son of a bitch! No, right here… there's some there but, but it's fucking ice, that's it. [ice is known to be methamphetamines]

JOSE: And how, how is that one going for? [what are methamphetamines selling for?]

UM: Well, we have that one at eleven fifty (1150). [One ounce of methamphetamines for $1,150.00]

JOSE: All right. Because a friend of mine had been asking me. But the thing is that… you see, I really don't know anything about that, dude.

UM: Well, yes. Yes, well, there's some right now. There is some right now. [some methamphetamines]

JOSE: And, uh, that one… that one is also like, like…

UM: Yes, like onions. [Onions is known to be code of ounces]

JOSE: Like little onions, at eleven fifty (1150) you said? [An ounce of methamphetamines for $1,150.00?]

UM: Yes. Well, if… it depends how many he gets. If he gets about three (3) [ounces], four (4) [ounces], well, I'll give them to him at eleven (11). [$1,100.00 per ounce]

JOSE: All right. Yes, then, later on I'm, I'm going to go over there, where I have to go and, and I'm going to talk to him and see what… see what he tells me.

UM: All right.

[VOICES OVERLAP]

JOSE: Then, I'll, I'll give you a call.

UM: All right, then. That's cool. Then…

[VOICES OVERLAP]

JOSE: Uh-huh. I'll call you, then, because I have to go over there in a little bit. I have a car there and I have to go pick it up.

UM: Mm-hmm.

6

> **JOSE**: And, and then I'll talk to him because it was just this Saturday that he was asking me if, if I could get him something.
>
> **UM**: All right. Yes, well, tell him that if he gets a few, well, they'll be at eleven (11) [$1,100.00 per ounce of methamphetamines] but two (2) for... I'll, I'll give them to him at eleven fifty (1150). [if he gets two ounces it will be $1,100.00 per ounce]
>
> **JOSE**: Uh-huh. All right.
>
> **[VOICES OVERLAP]**
>
> **UM**: And three (3), four (4), well...
>
> **JOSE**: Yeah. It, it's good. Then, I'll give you a call.
>
> **UM**: All right.
>
> **JOSE**: Uh-huh. All right, then.
>
> **UM**: Bye.
>
> **[END OF CALL]**

12. Based upon your Affiant's training and experience and understanding of this investigation your Affiant believes that in this conversation Jose Salinas and the unknown male discuss the fact that neither currently have any supply of marijuana or what investigators believe is cocaine. Investigators believe that based upon this conversation it is apparent hat thought Jose Salinas is currently out of narcotics, he is know by this unknown male to distribute marijuana and cocaine. The remainder of this conversation is Jose Salinas and this unknown male discussing the prices of cocaine and methamphetamines. Based upon this call, it is your Affiant's belief that at the date of this call, this UM individual currently had a least four (4) ounces of methamphetamines.

**GPS Ping Warrant**

13. On March 13, 2012, at approximately 11:26am, the case agent obtained a federal warrant, signed by U.S. Magistrate Judge Terrence P. Kemp, to begin obtaining GPS ping data on cellular telephone number 740-205-7772. This is the cellular telephone that discussed the prices of narcotics with Jose Salinas in call #673.

14. On March 13, 2012, at approximately 3:31pm, the case agent began receiving GPS ping

7

data for cellular telephone number 740-205-7772. The initial GPS ping locations for this telephone numbers showed this phone to be in the area of **350 South Hague Avenue, Columbus, Ohio.**

15. On March 13, 2012, at approximately 6:51pm, surveillance units (CPD Detectives Bob Locke, Walt Miller and Wayne Buck, Gahanna PD Detective Rick Walker and HSI Special Agent Jeff Landthorn) observed a silver Ford Explorer Sport Utility Vehicle (SUV) bearing Ohio dealer license 7D7TD parked in the rear of 350 South Hague Avenue. It should be noted that GPS ping data for 740-205-7772 showed that at this time this telephone was also in the area of **350 South Hague Avenue, Columbus, Ohio**.

16. On March 13, 2012, at approximately 8:07pm, GPS ping data for 740-205-7772 showed that this telephone was in the area of The AutoZone located at 2141 West Broad Street, Columbus, Ohio. At this time, surveillance units located the silver Ford Explorer SUV bearing Ohio dealer license 7D7TD at the AutoZone located at 2141 West Broad Street, Columbus, Ohio.

## Identification of user of 740-205-7772

17. On March 13, 2012, Officer Byrne #1807, with the Columbus Police Department (CPD) conducted a vehicle stop on the silver Ford Explorer SUV bearing Ohio dealer license 7D7TD. This stop was initiated due to the fact that the vehicle was being driven without its headlights being turned on. Following the vehicle stop, CPD Detectives were are to obtain the following information related to the male driver and female passenger:

    Driver:
    Jose Rodriguez
    DOB: 10/03/1986
    Home address: **350 South Hague Avenue, Columbus, Ohio** (this address was provided by Rodriguez at the time of the stop)
    Telephone: 740-205-7772 (this telephone number was provided by Rodriguez at the time of the stop and is the same phone as discussed in paragraph #18)

    Passenger:
    Carmen Aguilas
    DOB: 10/28/1978

8

      SOC: 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

      Ohio Driver's License #: SW619910

      Carmen Aguilas advised Officer Byrne that she owns a car lot called Aguilas Auto Shop located at 1325 West Mound Street, Columbus, Ohio.

CPD Officer Byrne gave Jose Rodriguez a ticket for driving without headlights and for no driver's license. Both individuals were released on scene.

18. On March 13, 2012, your Affiant conducted computerized queries in various law enforcement databases on Jose Rodriguez DOB: 10/03/1986. Your Affiant was able to locate one arrest for Jose Rodriguez (FBI #694350LD3) by the Columbus Police Department on May 11, 2011 for possession of dangerous drugs – 58 grams of cocaine.

19. On March 17, 2012 at approximately 7:26pm, CPD Detective Wayne Buck conducted a drive-by of **350 South Hague Avenue, Columbus, Ohio.** Detective Buck advised that the silver Ford Explorer SUV bearing Ohio dealer license 7D7TD was observed parked in the rear of **350 South Hague Avenue, Columbus, Ohio.** It should be noted that GPS pings of 740-205-7772 showed that this telephone was in the area of **350 South Hague Avenue, Columbus, Ohio** at this same time.

20. On March 13, 2012 your Affiant conducted queries of the ping data obtained from 740-205-7772. This GPS ping data showed that every night since the initiation of the GPS pinging (March 13, 2012) on target telephone 740-205-7772 being used by Jose Rodriguez until the writing of this affidavit on March 20, 2012, GPS data showed this telephone in the area of **350 South Hague Avenue, Columbus, Ohio.** Specifically, this data showed that not only was this telephone in the area of **350 South Hague Avenue, Columbus, Ohio;** it remained at this residence over the course of the entire night on each night. Your Affiant believers that this shows that Jose Rodriguez is in fact living at **350 South Hague Avenue, Columbus, Ohio.**

## CONCLUSION

21. Based upon your Affiant's training and experience, your Affiant knows that it is common for drug traffickers of narcotics to keep notes, ledgers, logs and other documentation concerning individuals with whom they distribute narcotics as well as with whom they received their narcotics from within their residence they are residing. This documentation includes, but is not limited to, individuals names, addresses, telephone numbers, lists of amounts of narcotics, lists of prices and amounts of narcotics sold.
22. Additioanlly, based upon your Affiant's training and experience, your Affiant knows that it is common for drug traffickers of narcotics to keep monies from the sale of narcotics at the residence they are residing.
23. In addition, your Affaint knows that it is common for drug traffickers to utilize mulitple cellular telephones, including the telephone utilizing telephone number 740-205-7772 which was described above, to conduct narcotics deals.
24. Based on my training and experience, and the facts contained within this affidavit, I believe that **350 South Hague Avenue, Columbus, Ohio, along with the curtilage, any outbuildings or detached garages, and any vehicles on the property**, contain fruits, evidence, and instrumentalities of violation of Title 21, United States Code Sections 841 (a) (1), and Title 21, United States Code, Section 843(b).
25. Based on the foregoing information, there is probable cause to believe that evidence of illegal narcotics distribution and/or drug proceeds are currently located at **350 South Hague Avenue, Columbus, Ohio, along with the curtilage, any outbuildings or detached garages, and any vehicles on the property**, in violation of Title 21, United States Code Sections 841 (a) (1), and Title 21, United States Code, Section 843(b), and therefore subject to seizure and forfeiture by the United States government.
26. Therefore, based upon the facts and for the reasons set forth above, I respectfully request that a search warrant be issued authorizing law enforcement personnel to search the premises as set forth herein and in "Attachment A" hereto and to seize the materials as set forth herein and in "Attachment B" hereto. These materials constitute evidence of violations of Title 21 United States Code Sections 841 (a) (1) – Conspiracy to possess with the intent to distribute narcotics and Title 21, United States Code, Section 843(b) - the use of a communication facility to commit, facilitate or further the commission of a Title 21, United States Code, felony offense.

10

27. IT IS FURTHER REQUESTED due to the fact that information used in this affidavit includes data taken from an active T-III wire intercept, your Affiant requests that this affidavit be sealed until further ordered by the Court in order to avoid premature disclosure of the T-III wire intercept investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, HSI and any other law enforcement agency designated by the United States Attorney's Office.

Ryan Marvich
Special Agent
Homeland Security Investigations

Sworn to before me this
22t day of March 2012

Honorable Terrence P. Kemp
United States Magistrate Judge
Southern District of Ohio

## ATTACHMENT A

### DESCRIPTION OF PREMISES AND PROPERTY TO BE SEARCHED

350 South Hague Avenue, Columbus, Ohio is described as a white two-story double house with dark trim paint. The house sits on the east side of the street with the front door facing west. It has a front porch that runs the length of the home. 350 is clearly marked on the front of the north side unit. The other half of the house has an address of 352.

## ATTACHMENT B
## PROPERTY TO BE SEIZED

A. Log books, records, payment receipts, notes and/or customer lists, ledgers, and other papers relating to the transportation, ordering, purchasing processing, storage, and distribution of controlled substances, in particular methamphetamines; all records of income and expenses for the years 2011 and 2012.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to travel to obtain and distribute narcotics and narcotics proceeds. Evidence of such travel is often times maintained by narcotics traffickers in the form of airline receipts, bus tickets, automobile rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, logs, travel agency vouchers, notes, cellular telephone tolls, and records of long distance telephone calls.

C. Books, records, invoices, receipts, records of real estate transactions, financial statements, bank statements, canceled checks deposit tickets, passbooks, money drafts, withdraw slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money.

D. Cellular telephone(s) and/or portable cellular telephone(s), and any stored electronic communications contained therein.

E. United States currency, precious metals, jewelry, gold coins, and financial instruments, including, but not limited to, stocks and bonds.

F. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular, photographs of co-conspirators, of assets and/or narcotics.

G. Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

H. Indicia of occupancy, residency, rental and/or ownership of the premises described above or vehicles located thereon, including but not limited to utility and telephone bills, canceled envelopes, keys, deeds, purchase lease agreements, land contracts, titles, and vehicle registrations.

I. The opening and search, and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained.
J. Narcotics paraphernalia, including but not limited to, scales, packaging materials/equipment and other instrumentalities of narcotics activities.
K. Any and all firearms.